UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD DEAN YANDELL, | No. C 06-6332 MHP (pr) |
| Petitioner, | **ORDER GRANTING MOTION TO DISMISS AND REQUIRING ELECTION BY PETITIONER** |
| v. | |
| R. HOREL, warden, | |
| Respondent. | |

## INTRODUCTION

Ronald Dean Yandell, an inmate at Pelican Bay State Prison, filed this pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a motion to dismiss, which Yandell has opposed. For the reasons discussed below, the motion to dismiss will be granted and Yandell will be required to choose what to do about the unexhausted claim in his petition.

## BACKGROUND

Yandell was convicted in 2004 in Contra Costa County Superior Court of first degree murder and voluntary manslaughter, and was found to have used a firearm in the commission of the crimes. The California Court of Appeal affirmed Yandell's conviction and the California Supreme Court denied his petition for review. He filed two habeas petitions in the California Supreme Court, although the first petition was dismissed at his request before the court decided it.

Yandell's federal habeas petition alleged four claims: (1) Yandell's right to due process was violated because there was insufficient evidence to support the murder and

manslaughter convictions, (2) Yandell's right to due process was violated by the trial court's exclusion of impeachment evidence regarding witness Mark Gutierrez, (3) Yandell's right to effective assistance of counsel was violated by trial counsel's deficiencies identified in the petition, and (4) Yandell's rights to due process and fair trial were violated by police and prosecutorial misconduct.

Respondent moved to dismiss on the ground that state court remedies were not exhausted for part of the fourth claim. Specifically, respondent argued that Yandell did not exhaust state court remedies for his claim that the police and prosecutor committed misconduct by not investigating a second bullet hole discovered in victim Dino Gutierrez's bedroom wall. Yandell opposed the motion, arguing that he had presented the claim to the California Supreme Court in a Supplemental Exhibit.

## DISCUSSION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement must first exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b),(c); Rose v. Lundy, 455 U.S. 509, 515-16 (1982); Duckworth v. Serrano, 454 U.S. 1, 3 (1981). The exhaustion-of-state-remedies doctrine reflects a policy of federal-state comity to give the state "'the initial "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted).

In order to properly exhaust, the specific factual basis of the federal claim must be presented to the highest state court. See Kelly v. Small, 315 F.3d 1063, 1067-69 (9th Cir. 2003) (finding unexhausted ineffective assistance of counsel and prosecutorial misconduct claims where specific instances of ineffectiveness and misconduct asserted in federal petition were neither in the California Supreme Court petition nor discussed by the court of appeal). New factual allegations in a federal petition, however, do not render a claim unexhausted unless they fundamentally alter the legal claim already considered by the state courts.

2

1  Belmontes v. Brown, 414 F.3d 1094, 1117-18 (9th Cir. 2005), rev'd on other grounds, 127 S.
2  Ct. 469 (2007).

3        The issue here is whether the bullet hole claim was exhausted in Yandell's second
4  state habeas action, as the parties appear to agree that the direct appeal and first state habeas
5  action did not include the claim in question. Having compared Yandell's federal habeas
6  petition with the habeas petition and related materials he filed in the California Supreme
7  Court, the court agrees with respondent's contention that state court remedies were not
8  exhausted for the police/prosecutorial misconduct claim as to the bullet hole. In both his
9  state and federal habeas petition, Yandell argued that there was police/prosecutorial
10 misconduct that denied him his rights to due process and a fair trial. In both his state and
11 federal petition, Yandell identified numerous specific acts and omissions of the police and
12 prosecutor that were allegedly misconduct. In his federal petition, Yandell alleged that (a)
13 the police failed to collect 2 bags of suspicious white powder, blood stained rugs, bloody
14 clothes, and blood trail evidence, (b) the prosecution introduced knowingly false and
15 misleading information regarding the trajectory of a bullet that made a bullet hole in a couch,
16 (c) a criminalist failed to test a bullet for fingerprints, (d) the prosecution failed to investigate
17 a handgun found in the bushes to see if it could be linked to an unidentified bullet recovered
18 from Dino's body, *(e) the police failed to investigate a second bullet hole in Dino's bedroom
19 wall*, and (f) the police failed to collect a pipe that witness Mark used to smoke drugs.
20 See Petition, pp. 14-19. Yandell's state habeas petition alleged numerous instances of police
21 and prosecutorial misconduct, but did not specify the failure to investigate a second bullet
22 hole in Dino's bedroom wall as one of those instances of misconduct.

23       The failure to investigate the second bullet hole was mentioned in the California
24 Supreme Court, albeit in a way that virtually guaranteed it would fail to lead to any relief.
25 Four months after Yandell filed his habeas petition in the California Supreme Court, he filed
26 a document entitled "Supplemental Exhibit in Support Of Writ of Habeas Corpus. Ground
27 IV. Prosecutorial Misconduct." The text of the Supplemental Exhibit stated that Exhibit H
28 attached to the Supplemental Exhibit was a Contra Costa Sheriff's report that Yandell had

3

received on April 10, 2006. The Supplemental Exhibit stated that Exhibit H supported Yandell's "police/prosecution misconduct [claim] for failure to test and investigate crucial key evidence," corroborated one witness' testimony about the number of gunshots, contradicted the prosecutor's theory at trial that only five shots were fired, and "clearly proves prosecution's violation of petitioner's U.S. Constitutional rights to due process, and fair trial, U.S.C.A. 5, 14, by failing to conduct forensics tests on bullet-hole in victim Dino Gutierrez bedroom wall as indicated by police report." Id. at 1-2. Exhibit H was a sheriff's report that stated that on July 10, 2001 – about 5-6 weeks after the shooting – the deputy-author went with the deputy D.A. and inspector to view the scene for a better understanding of what occurred; while they were at the scene, a resident pointed out a bullet hole in Dino's bedroom wall. The author wrote that the hole "does not appear to be a recent gunshot but I intend to have the lab return and check the hole." Exh. H to Supplemental Exhibit. The Supplemental Exhibit did not tell the California Supreme Court that part of the misconduct argument had been omitted from the original petition and was now being added; instead it just mentioned an additional claim and did so in such a roundabout way – with the bullet hole claim being just one of several things that Exhibit H purportedly demonstrated – that it is unreasonable to expect that the court understood the Supplemental Exhibit to be the presentation of an additional claim of police/prosecutorial misconduct.

Although this court must read pro se litigant's filings liberally for purposes of resolving exhaustion problems, see Peterson v. Lampert, 319 F.3d 1153, 1159 (9th Cir. 2003) (en banc), it also must keep in mind that the purpose of the exhaustion requirement is to give the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Tucking the new claim away in a Supplemental Exhibit did not fairly present it to the California Supreme Court. It was almost a certainty that mentioning the claim only in a Supplemental Exhibit filed four months after the habeas petition – where there was no request to amend the petition, where there was no explanation that the Supplemental Exhibit was presenting a new and additional claim of misconduct, and where the attachment (Exhibit H) was not at all self-explanatory insofar as it purported to show misconduct – would not

4

result in any relief from the California Supreme Court. The claim that the police and prosecutors engaged in misconduct by failing to investigate the bullet hole was not fairly presented to the California Supreme Court and therefore is not exhausted.

Yandell's petition contains both exhausted and unexhausted claims and therefore is what is referred to as a "mixed" petition. See Rhines v. Weber, 544 U.S. 269, 277 (2005). The court cannot adjudicate the merits of a habeas petition containing any claim as to which state remedies have not been exhausted, such as a mixed petition. See Rose v. Lundy, 455 U.S. at 522.

Due to a critical one-year statute of limitations on the filing of federal habeas petitions under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d), the court is reluctant to dismiss the mixed petition (and possibly cause a later-filed petition to be time-barred) without giving Yandell the opportunity to elect whether to proceed with just his exhausted claims, or to try to exhaust the unexhausted claim before having this court consider all three claims. Accordingly, instead of an outright dismissal of the action, the court will allow Yandell to choose whether he wants to –

(1) dismiss the unexhausted claim and go forward in this action with only the two exhausted claims, or

(2) dismiss this action and return to state court to exhaust all claims before filing a new federal petition presenting all of his claims, or

(3) file a motion for a stay of these proceedings while he exhausts his unexhausted claim in the California Supreme Court.

Yandell is cautioned that the options have risks which he should take into account in deciding which option to choose. If he chooses option (1) and goes forward with only his exhausted claims, he may face dismissal of any later-filed petition. See 28 U.S.C. § 2244(b). If he chooses option (2), dismissing this action and returning to state court to exhaust all claims before filing a new federal petition, his new federal petition may be rejected as time-barred. See 28 U.S.C. § 2244(d). If he chooses option (3), he must file a motion in this court to obtain a stay and (if the motion is granted) then must act diligently to file in the California

5

Supreme Court, to obtain a decision from the California Supreme Court on his unexhausted claim, and to return to this court. And under option (3), this action stalls: this court will do nothing further to resolve the case while petitioner is diligently seeking relief in state court.

In Rhines, the U.S. Supreme Court discussed the stay-and-abeyance procedure for mixed habeas petitions. The Court cautioned district courts against being too liberal in allowing a stay because a stay works against several of the purposes of the AEDPA in that it "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceeding" and "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Rhines, 544 U.S. at 277. A stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," the claims are not meritless, and there are no intentionally dilatory litigation tactics by the petitioner. Id. at 277-78. Any stay must be limited in time to avoid indefinite delay. Id. Reasonable time limits would be 30 days to get to state court, as long as necessary in state court, and 30 days to get back to federal court after the final rejection of the claims by the state court. See id. at 278; Kelly v. Small, 315 F.3d at 1071.

**CONCLUSION**

Respondent's motion to dismiss is GRANTED in part. (Docket # 23.) Petitioner must serve and file no later than **January 18, 2008**, a notice in which he states whether he elects to (1) dismiss the unexhausted claim and go forward in this action with only the remaining claims, or (2) dismiss this action and return to state court to exhaust all of his claims before returning to federal court to present all of his claims in a new petition, or (3) moves for a stay of these proceedings while he exhausts his state court remedies for the unexhausted claim. If he chooses Option (1) or Option (2), his filing need not be a long document; it is sufficient if he files a one-page document entitled "Election By Petitioner" and states simply: "Petitioner elects to proceed under option ___ provided in the court's Order Granting Motion To Dismiss And Requiring Election By Petitioner." Petitioner would have to insert a number in place of

the blank space to indicate which of the first two options he chooses. If he chooses Option (3), petitioner must file a motion for a stay in which he explains why he failed to exhaust his unexhausted claims in state court before presenting them to this court, that his claims are not meritless, and that he is not intentionally delaying resolution of his constitutional claims. He must serve and file the motion for a stay no later than **January 18, 2008**. If petitioner does not choose one of the three options or file a motion by the deadline, the court will dismiss the action.

IT IS SO ORDERED.

DATED: January 2, 2008

Marilyn Hall Patel
United States District Judge